CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

DEC 0 2 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNIVERSITY OF VERMONT AND STATE AGRICULTURAL COLLEGE, )<br><br>and )<br><br>GAIL WELLS, )<br><br>and )<br><br>BRUCE WELLS, )<br><br>and )<br><br>WILFRIDO CRUZ, )<br><br>and )<br><br>GUADALUPE JAENSTCHKE, )<br><br>and )<br><br>VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY, )<br><br>and )<br><br>EMPIRE FIRE & MARINE INSURANCE COMPANY, )<br><br>Defendants. ) | Civil Action No. 7:06-CV-00022<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. James C. Turk<br><br>Senior United States District Judge |

This Declaratory Judgment action is presently before the Court on Plaintiff Discover Property's Motion for Summary Judgment (Dkt. No. 40) and Defendant University of Vermont and State Agricultural College's Motion for Summary Judgment (Dkt. No. 43). For the reasons set forth herein, the Court **GRANTS** Discover Property's Motion for Summary Judgment as to Defendants Cruz and Jaenstchke. As a result, the University of Vermont and State Agricultural College's Motion for Summary Judgment is rendered **MOOT**.

Discover Property is the insurance carrier for the University of Vermont and State Agricultural College (hereafter "UVM") and under certain conditions had agreed to extend coverage to employees of UVM. Defendant Cruz was an employee of UVM and Defendant Jaenstchke was his girlfriend. Defendants Bruce Wells and Gail Wells were injured in a car crash involving Cruz and Jaenstchke, and are Complainants in a separate matter before the Court (the "Wells Suit"), in which they named Cruz, Jaenstchke, UVM, and Virginia Farm Bureau Mutual Insurance Company as Defendants.[1] Virginia Farm Bureau Mutual Insurance Company is the insurance carrier for Bruce and Gail Wells and provided them with an insurance policy containing an uninsured motorist clause. Empire Fire & Marine Insurance Company ("Empire") is the insurance carrier for Tamarack Services of Vermont, which operates the Thrifty Car Rental Agency that rented the car to Cruz. Tamarack is not a named party in either suit.[2] Wells has asserted that Empire must defend and indemnify Cruz and Jaenstchke in connection with the accident.[3]

---

[1] Wells v. Jaentschke, et al., Case No. 7:07-CV-00140.
[2] Tamarack is referred to throughout the record as Thrifty Car Rental, and the Court adopts the use of the Thrifty name in its decision.
[3] Wells moved to join Empire on February 20, 2009 and the Court granted the motion on March 9, 2009. Neither Empire nor Tamarack were joined as parties in the Wells Suit.

## I. Background

Defendant Wilfrido Cruz was, at the time of this accident, employed by UVM as an Assistant Director of Admissions. As an Assistant Director of Admissions, he was responsible for visiting high schools throughout the New York, New Jersey area and recruiting students to attend UVM. To travel between Burlington, Vermont and the many different high schools, he routinely rented cars through UVM's rental car accounts. On Thursday, May 20, 2004, Cruz rented a car from Thrifty in Burlington, Vermont using UVM's corporate account with Thrifty. Cruz, Defendant Jaenstchke and Jaenstchke's two year old daughter left Burlington that evening and drove south toward New York City. They passed through the New York area sometime after midnight, stopping for gas in the Bronx. They continued to drive south towards Charlotte, North Carolina where they were planning to visit Cruz's sister. At some point in time early the next morning, Cruz, who had been driving the rental car throughout the trip, became tired and let Jaenstchke drive. At approximately 8:00 AM on the morning of Friday, May 21, 2004, while driving on Interstate 81 near Roanoke, Virginia, Jaenstchke was involved in an automobile accident with a van owned by Defendants Bruce and Gail Wells.

Defendant Gail Wells was seriously injured in this accident and eventually filed suit in Roanoke County Circuit Court, i.e., the Wells Suit. Cruz removed the case on the basis of diversity jurisdiction.[4] Prior to the filing of the Wells Suit, however, Discover Property had already filed the instant action seeking a declaratory judgment that, under the commercial insurance policy issued to UVM, Discover had no duty to defend or indemnify Cruz or Jaenstchke with respect to claims made by Defendant Wells. Discover

---

[4] Cruz was domiciled in the State of Indiana at the time of the accident, Jaenstchke was domiciled in the State of Vermont, UVM is a public university having its principal place of business in Burlington, Vermont, and Wells was domiciled in the State of Virginia.

3

claims that neither Cruz nor Jaenstchke is an "insured" within the meaning of the subject liability insuring agreement. Discover does not deny that it has a duty to defend or indemnify UVM.[5] Correspondingly, UVM's Motion for Summary Judgment adopts and elaborates on the same arguments put forth by Discover Property. Cruz claims that there is an issue of material fact as to whether he was acting within the scope of his employment with UVM or within the scope of permission granted by UVM at the time of the accident. Jaenstchke, pro se, has not presented any arguments. Wells has adopted the arguments of Cruz, while the other defendants have not briefed the issue.

## II. Standard of Review

A court must grant a motion for summary judgment if "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(2). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990). But where the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

## III. Choice of Law

A federal court sitting in diversity must apply the substantive law of the state in which it sits, including the choice of law rules of the forum state. Klaxon v. Stentor Mfg.

---

[5] Counsel for the parties concurred on this point at a hearing on the Motion for Summary Judgment.

Co., 313 U.S. 487 (1941). In Virginia, interpretation of an insurance contract is governed by the law of the place where the contract was delivered. Metcalfe Bros., Inc., v. Am. Mut. Liab. Ins. Co., 484 F. Supp. 826, 829 (W.D.Va 1980) (citing Woodson v. Celina Mut. Ins. Co., 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970)). Because the Discover Policy at issue in this case was delivered to UVM in Burlington, Vermont, questions concerning the interpretation of the insurance contract and, particularly, whether Cruz is an "insured" under the policy must be decided under Vermont law.

## IV. Analysis

The Discover Policy maintained by UVM dictates that Discover will pay for "all sums that an 'insured' legally must pay as damages." *Ins. Policy, Pg. 2.* To be an "insured" under the Discover Policy, a person is required to be acting within the scope of their employment, engaged in authorized UVM activities, or otherwise using the vehicle with UVM's permission. See, e.g., *Policy Endorsement 1* ("'insureds' [include UVM employees] while operating an 'auto' in [UVM's] business"); *Ins. Policy, Pg. 2* (insureds include anyone "using with [UVM's] permission a covered auto [that UVM] ...hires or borrows."). Additionally, Discover agreed to insure people with whom UVM, itself, specifically agreed to cover under the Discover Policy. See *Policy Endorsement 3* (insureds include persons "for whom or to whom [UVM] has agreed to provide insurance"); *Policy Endorsement 4* (insureds include persons "for whom [UVM] has agreed in a written contract to provide insurance). Under Policy Endorsements 3 & 4, UVM expressly limited the insurance they agreed to provide to employees "engaged in authorized University functions" or "acting within the scope of University employment." *Wertheimer Aff., Exh. 1.* Reading the policy language and all endorsements in

conjunction, it is apparent that for either Cruz or Jaenstchke to be deemed an "insured" and entitled to indemnification or defense under the Discover Policy, they would have to have been either (A) acting within the scope of UVM employment or (B) otherwise acting with UVM's permission.

A. Scope of Employment

Under Vermont law, the determination of whether an employee's conduct falls within the scope of his or her employment is guided by standards set forth in Doe v. Forrest, 176 Vt. 476, 853 A.2d 48 (2004). One seeking to establish that the conduct is within the scope of employment must show that the conduct "(a) ...is of the kind the servant is employed to perform; (b) ...occurs substantially within the authorized time and space limits; (c) ...is actuated, at least in part, by a purpose to serve the master." Id. at 483, 853 A.2d at 54 (citing Brueckner v. Norwich Univ., 169 Vt. 118, 122-23, 730 A.2d 1086, 1090 (1999). To demonstrate that the conduct is outside the scope of employment, one must show that it is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Sweet v. Roy, 173 Vt. 418, 431, 801 A.2d 694, 704 (2002). The Court believes that neither Cruz nor Jaenstchke can demonstrate that a genuine issue of material fact exists as to whether their conduct was within the scope of employment. Instead, uncontroverted evidence demonstrates that the conduct of both Cruz and Jaenstchke was outside the scope of employment.

First, there is no doubt that Jaenstchke's conduct was outside of any employment with UVM. Jaenstchke was never employed by UVM. She was not motivated in any

way by any purpose to serve the interests of UVM. Finally, she has not provided any evidence that UVM ever agreed to provide her with insurance.

A slightly more complicated question is whether Cruz could be described as within the scope of his employment at the time of the accident. Viewed in the light most favorable to Cruz, the evidence before the Court suggests that UVM permitted admissions officers such as Cruz to rent automobiles for the weekend prior to a college visit. It is uncontested that Cruz had scheduled a high school visit in New Jersey on Monday, May 24, 2004. Thus, Cruz asserts that, because he would be returning to the scheduled high school visit in New Jersey after his trip to North Carolina, his entire trip was within the scope of his employment. When these circumstances are evaluated under the standards endorsed by Doe v. Forrest, however, his argument is without merit.

First, when Cruz entrusted the rental car to Jaenstchke his conduct was not "of the kind the servant is employed to perform." Forrest, 176 Vt. at 483, 853 A.2d at 53. Cruz was authorized to use the car for his own travel. Cruz was never authorized to lend the car to anyone, nor did his job entail supervising or traveling with third parties. In fact, by permitting Jaenstchke to drive the rental car Cruz was violating several different UVM policies.[6] The entrustment of the rental car to an unlicensed, underage, unauthorized driver who was unaffiliated with UVM is utterly inconsistent with even Cruz's definition of what his job entailed.

Second, Cruz's travel to North Carolina was not "substantially within the authorized time and space limits" of his employment. Forrest, 176 Vt. at 483, 853 A.2d

---

[6] As noted infra, UVM policies expressly prohibit unauthorized, underage, and unlicensed drivers from driving University vehicles. *Wertheimer Aff.* ¶ *2.a.* UVM also instructs their employees to "not let anyone drive a rental vehicle who is not designated on the rental contract as a driver." *Wertheimer Aff.* ¶ *2.d.* Cruz admits that he violated the Thrifty Rental Car Policy by allowing Jaenstchke to drive the vehicle when she was not listed on the rental agreement. *Cruz Dep. 18:19-22.*

at 53. Cruz has asserted that it was "common practice at UVM for assistant directors of admissions...to travel over weekends using UVM rental vehicles where the out of state event took place on a Monday or Friday." *Def. Brief Pg. 7*. Taking this assertion as true, however, does not mean that his conduct was within the "authorized time and space limits" of his employment. Cruz's conduct took place outside of the space limits of his employment. His only business for the trip was a college fair in New Jersey – he had no business in Roanoke, Virginia or Charlotte, North Carolina. *Dewey Aff. ¶¶ 1, 5, 6*. Cruz admitted in his deposition that his understanding of personal travel over the weekend entailed "go[ing] down to the New York City/New Jersey area...in advance of the college fair on Monday." Cruz Dep. 75:5-24. In fact, his assigned territory was the New York/New Jersey area and he had never worked in Roanoke or Charlotte. Cruz Dep. 27:8-10. Accordingly, in a letter sent to Cruz warning of possible dismissal UVM, it was expressly noted that the "destination was far from your assigned recruitment territory." Honeman Aff., Exh. 2. Thus, while a personal visit close to his eventual business destination in New Jersey might well have been within the authorized space limits, a trip to a city 600 miles away was not.

Cruz was not within the authorized time limits of the scope of his employment. Although there is some confused discussion in the record about a potential meeting with high school guidance counselors in New York City on Friday, May 21, 2004, the record is, in fact, unequivocal. There was no business in New York City and Cruz was on vacation on the day of Friday, May 21, 2004. *Cruz Dep. 59:15-19; Cruz Dep. 64: 2-19*. In fact, Cruz most likely passed through New York City in the middle of the night when it would have been impossible for him to have been conducting any UVM business. *Cruz*

8

*Dep. 66:1-3.* Consistent with his scheduled vacation day, Cruz was engaged in a purely personal matter of traveling to North Carolina to visit his sister. It was on his vacation day, and not, for example, on the Sunday afternoon prior to the scheduled college fair that the accident occurred. He cannot, therefore, be deemed to be within the authorized time limits of his employment.

Third, Cruz's travel was not "actuated, at least in part, by a purpose to serve the master." Forrest, 176 Vt. at 483, 853 A.2d at 53. It is uncontested that Cruz had no business in Charlotte, North Carolina. Although a trip to the New York/New Jersey would have provided a benefit to UVM, once Cruz had passed the limit of his recruiting area, his further trip to North Carolina did not. The Vermont Supreme Court, in Gutzwiller v. American Tobacco Co., explained that "in order to hold a master liable for the acts of his servant, it must appear that the act complained of was done to carry out the directions of the master, express or implied, and not to effect some purpose of the servant alone." Id., 97 Vt. 281, 283, 122 A. 586, 588 (1932). Although Cruz would have returned, eventually, to the New Jersey college fair and performed his business duties, the trip to North Carolina was not to carry out the directions of the master, nor did it further the performance of his duties, nor redound any benefit to UVM. In Gutzwiller, the employee had ignored the employer's instructions to store the car promptly after work for the Christmas holidays. Importantly, however, the employee was still using the car for tasks associated with the business, e.g., mailing reports, gathering accessories of the car, preparing the car for storage. Thus, the Gutzwiller court's conclusion, "the fact [the employee] was using the automobile at the time for his own convenience…did not affect the situation, if he was using it in furtherance of the company's business," has no bearing

here. Id. Where an employee merely intends to perform some business task in the future, but embarks on a 600 mile car trip prior to engaging in that task, the 600 mile trip is quite clearly an act "to effect the purpose of the servant alone." Id. In Gutzwiller the employee was doing what "was necessary to carry out his instructions," but in the instant circumstances, Cruz was acting contrary to UVM's instructions respecting the rental car, was engaged in a trip completely divorced from any UVM purpose, and, thus, was "on a frolic of his own." Id.

B. With UVM Permission

For Cruz or Jaenstchke to be within the scope of the Discovery Policy, notwithstanding the fact their conduct was outside the scope of employment, they would need to demonstrate that they were using the car with UVM's permission at the time the accident occurred. Although UVM has conceded that Cruz had a broad ranging permission to rent cars for his high school trips, an employer's initial grant of permission for purely business purposes will not be construed as a grant of permission for all purposes. Nat'l Grange Mut. Ins. Co. v. Churchill, 126 Vt. 428, 431, 234 A.2d 334, 336 (1967). There is some evidence, however, that UVM would grant permission for employees to use a rented car on weekends for personal use if there was a business use of the car on either Friday or Monday. *Cruz Dep. 75:5-24*. Viewing this evidence in the light most favorable to the non-moving party, the Court could conclude that UVM had, in fact, granted permission for limited personal use to its employees.

If there is an initial grant of permission, under Vermont law there is a presumption that the particular use to which the car was being put was within the scope of that consent. Ins. Co. of North Am. v. Millers' Mut. Ins. Ass'n of Ill., 139 Vt. 255,

427 A.2d 354 (1981). This presumption is rebutted if a party can show that the operation of the car involved a major deviation from the consent given. See, e.g., id. (where attempt to drive 100 miles beyond original destination was a major deviation from consent and thus vitiated initial permission); Am. Fid. Co. v. Employers Mut. Cas. Co., 128 Vt. 351, 264 A.2d 770 (1970) (where potential car buyer's trip to Connecticut and Massachusetts exceeded dealership's consent to test drive the car only in Vermont). Other decisions of the Vermont Supreme Court suggest that this presumption is also overcome when the actual use is so removed from the purpose of the loan of the vehicle that it could be classified as a temporary tortious conversion. See Am. Fid. Co. v. North British & Mercantile Ins. Co., 124 Vt. 271, 204 A.2d 110 (1964).

As to Jaentscke, there was no evidence presented that suggests an initial grant of permission to use the car. The policies of UVM decree that "only authorized drivers with [UVM] in the capacity of student, staff or faculty shall be permitted to drive a University vehicle" and that the "driver must be at least 18 years old and in possession of a valid...driver's license." *Wertheimer Aff.* ¶ *2.a.* Ms. Jaenstchke was not authorized to drive by UVM, she was not a student, staff, or faculty member, she was not 18 years old, and she was not in possession of a valid driver's license. Thus, Ms. Jaenstchke did not have permission to use the car at all. Consequently, she cannot be said to fall under the aegis of UVM's insurance policy with Discover Property.

Cruz did have initial permission from UVM to use the rental car. Nevertheless, even with the facts viewed in the light most favorable to Cruz, it is clear to the Court that Cruz's use of the car involved such a major deviation from the consent that UVM had provided that he was acting outside the permission granted. The mere fact that UVM

may have granted permission to admission officers to use rental cars for personal use does not change this conclusion. In Ins. Co. of North America v. Millers' Mutual Ins. Ass'n of Ill. the court found that, although the owner of the car granted the driver permission to use the car for some personal activities, a major deviation from the consent given would still vitiate that original permission. That is the case here as well. Although Cruz may have had permission to use the rental car for some personal activities, the uncontroverted extent of his conduct was a major deviation from the consent that was originally given. According to Cruz, he understood that it was "[his] option to go down to the New York/New Jersey area as many as two or three days in advance of the college fair on Monday." *Cruz Dep. 75:5-24*. But Cruz was headed to Charlotte, North Carolina that weekend, approximately 600 miles from the New York/New Jersey area. Regardless of whether Cruz's deviation is judged according to either the total distance traveled or the geographical area visited, his trip to North Carolina was a major deviation. See Ins. Co. of North Am., 139 Vt. at 258, 427 A.2d at 355 (100 extra miles is major deviation); Am. Fid. Co., 128 Vt. at 355, 264 A.2d at 773 (trip to Connecticut is major deviation).

Cruz also exceeded the scope of permission granted by UVM by allowing an unauthorized, underage, unlicensed driver to operate the vehicle. Nowhere does Cruz even suggest that UVM policies, express or implied, permitted him to allow others to use the car that he rented. As noted above, the UVM policies that address who is permitted to drive rental cars expressly prohibit unauthorized, underage, and unlicensed drivers from driving University vehicles. *Wertheimer Aff. ¶ 2.a*. Moreover, UVM policies also instruct their employees to "not let anyone drive a rental vehicle who is not designated on the rental contract as a driver." *Wertheimer Aff. ¶ 2.d*. Cruz admits that he violated

the Thrifty Rental Car Policy by allowing Jaenstchke to drive the vehicle when she was not listed on the rental agreement. *Cruz Dep. 18:19-22*. In permitting Jaenstchke to drive the rental car in violation of all applicable policies, Cruz's actual use is so removed from the purpose of the loan of the vehicle that it might be classified as a temporary tortious conversion. Cf. Am. Fid. Co., 124 Vt. at 275, 204 A.2d at 114. Even when the evidence is viewed in the light most favorable to Cruz, it is clear that entrusting the car to Jaenstchke was beyond the scope of permission that had been granted to him by UVM. Consequently, Cruz is not protected by UVM's insurance policy with Discover Property.

## V. Conclusion

For the above stated reasons, it is the opinion of the Court that Discover Property has no duty to indemnify or defend Cruz or Jaenstchke in connection with the car crash. Accordingly, Discover Property's Motion for Summary Judgment is hereby **GRANTED** as to Defendants Cruz and Jaenstchke. Because Defendant University of Vermont and State Agricultural College has sought the same declaration in their Motion for Summary Judgment, it is hereby dismissed as **MOOT**. The Court's conclusion obviates the further involvement of the other defendants added to this Declaratory Judgment action. Accordingly, the Court's accompanying Order strikes the case from the active docket. The Clerk of Court is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record in this matter.

ENTER: This 2nd day of December, 2009.

*/s/ James C. Turk*
Hon. James C. Turk
Senior United States District Judge